DMAX, LTD., LLC, *et al.*,      :    Case No. 3:17-cv-00429
                               :
        Plaintiffs,      :    District Judge Walter H. Rice
                               :    Magistrate Judge Sharon L. Ovington
vs.      :
                               :
U.S. DEPARTMENT OF HOMELAND      :
SECURITY, *et al.*,      :
                               :
        Defendants.      :

---

## REPORT AND RECOMMENDATIONS[1]

---

### I.      Introduction

"Experience is the teacher of all things," as Julius Caesar observed,[2] but work experience will not always gain an immigrant or alien lawful permanent residence in the United States.  Plaintiff Tetsuya Onozato, a Japanese citizen, and his employer, Plaintiff DMAX, LTD., LLC (a manufacturer of diesel engines), encountered this situation when Defendants denied the I-140 Immigrant Petition DMAX filed on Mr. Onozato's behalf.

Plaintiffs bring the instant case claiming that Defendants arbitrarily and capriciously denied DMAX's I-140 Petition in violation of the Administrative Procedures Act.  *Id.* at 2.  They seek declaratory relief establishing that Defendants' decision was arbitrary and capricious (1) by irrationally deviating from U.S. Citizenship and Immigration Service's policy and procedure, and (2) in holding Plaintiffs to a higher

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2] *Commenaril de Bello Civili* (Commentaries on the Civil War), 2.8 (50 BCE).

evidentiary burden and imposing novel evidentiary requirements on them in excess of statutory jurisdiction, authority, or limitation.  Plaintiffs also seek injunctive relief requiring Defendants to reopen the administrative proceedings concerning Mr. Onozato.  (Doc. #1, *PageID* #12).

The case is presently before the Court upon Defendants' Motion to Dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6) and the parties' related briefing.  (Doc. #s 24, 27, 31).

## II.    Background

Because Defendants seek a Rule 12(b)(6) dismissal, the Court accepts as true the Complaint's well-pleaded factual allegations, construes the Complaint in Plaintiffs' favor, and draws all reasonable inferences in Plaintiffs' favor.  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).  Although "the court primarily considers the allegations in the complaint…, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account."  *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation and emphasis omitted).  Proceeding in this manner reveals the following.

### A.    DMAX's Application for Certification

Plaintiffs face a very difficult immigration problem in light of a single key fact they acknowledge in their Complaint:  Mr. Onozato "does not hold a bachelor's degree …."  (Doc. #1, ¶ 20).  This problem developed when, after employing Mr. Onozato as a Maintenance Engineer for several years (at least), DMAX decided to help him secure a professional employment-based visa, known as an EB-3 visa.  *See* Doc. #1, *PageID* #s

37, 43-44, 78, 83.  DMAX's first task in securing this professional visa was to apply for

and obtain certification from the U.S. Department of Labor.  *See* 20 C.F.R. § 656.17(a)(1)

("[A]n employer who desires to apply for a labor certification on behalf of an alien must

file a completed Department of Labor Application for Permanent Employment

Certification form (ETA Form 9089).").  To obtain certification, DMAX needed to

"demonstrate to the [Department of Labor] that no U.S. worker is available to fill the

position and that, by filling the position with an alien worker, the wages and working

conditions of similarly employed domestic workers are not adversely affected."

*Sunshine Rehab Services, Inc. v. U.S. Citizenship and Immigration Services*, No. 09-

13605, 2010 WL 3325442, at *2 (E.D. Mich. Aug. 20, 2010) (discussing 8 U.S.C. §

1182(a)(5)(A)).

        In December 2015, DMAX submitted to the Department of Labor the required

ETA Form 9089 Application for Permanent Employment Certification on Mr. Onozato's

behalf.  (Doc. #1, *PageID* #s 32-45).  In the Application DMAX described its attempts to

recruit a professional Maintenance Engineer other than Mr. Onozato.  DMAX also

explained that it needed to hire a Maintenance Engineer with the minimum education of

something "other" than a bachelor's degree or any level of educational degree (from high

school to doctorate).  *Id*. at 33.  The something "other," as DMAX put it, was a

"Bachelor's degree equivalent as determined by credentials agency[.]"  *Id*. at 34.  DMAX

also needed its Maintenance Engineer to have "96 months of progressively advanced

experience of controls systems used in Japanese machine tools."  *Id*.  DMAX made clear

in its Application that Mr. Onozato had a combination of education and work experience sufficient to qualify him to be its Maintenance Engineer. *Id*. at 37.

DMAX further reported in its Application that it had offered Mr. Onozato the position of Maintenance Engineer, *id*. at 35; that this was a "professional occupation," *id*.; that Mr. Onozato's bachelor's degree equivalent was satisfied by the combination of his engineering studies at the University of Florida and his experience while working for DMAX in a position substantially comparable to that of Maintenance Engineer, *id*. at 37; and that it currently employed Mr. Onozato. DMAX recounted that Mr. Onozato's former employer (Isuzu Motors) had assigned him to work at DMAX as Maintenance Engineer from 2005 to 2011. *Id*. at 38. Mr. Onozato's work during that time required him to engage in many specialized activities as Maintenance Engineer. DMAX's Application explains:

> Mr. Onozato was assigned for North America Engine Project at DMAX-Ltd as a Maintenance Engineer to advise the Crankshaft Line; provided engineering support for the daily production activities as an adviser for the Crankshaft line; supported the Maintenance members' skills improvement and machine repairs; created maintenance procedure manuals; negotiated with Japanese machine makers for machine issues; worked on Block, Crank, Connecting Rod Line Machines: NTC, Nissin, Toyoda, Nachi, Marposs, Dowa, JGC, Fanuc, and Omron. Also involved in training EST, MST, GL; identify and manage repair, rebuild, replace projects and provide input to MTTR, MTBF, spare parts, operating costs[.]

(Doc. #1, *PageID* #44).

DMAX's Application also set forth Mr. Onozato's earlier work experience (from 1994 to 2004) with other employers, noting that he worked in maintenance and machinery repair. During that time, Mr. Onozato earned "qualifications" as a "Level 2

electronic equipment assembly technician qualification" and a "Level 2 maintenance electrical system qualification."  *Id*. at 45.

In May 2016, the Department of Labor certified DMAX's Application.  *Id*. at 28. This means, in Plaintiffs' view, that Mr. Onozato's "sixteen years of work experience…, has been certified by the Department of Labor to be the equivalent of a U.S. bachelor's degree, or its foreign equivalent."  *Id*. at ¶20.  Whether this is a correct understanding of the Department of Labor's certification is central to the parties' present dispute.

## B.     DMAX's USCIS I-140 Petition

Two months later, with its Department of Labor Certification in hand, DMAX turned to the U.S. Citizenship and Immigration Services (USCIS) by filing an I-140 Petition For An Alien Immigrant Worker on Mr. Onozato's behalf.  Its Petition asked USCIS to grant Mr. Onozato a professional EB-3 visa.  DMAX supported its I-140 Petition not only with the Department of Labor certification but also with an evaluation written by James Klausner, Ph.D., Professor of Mechanical and Aerospace Mechanical Engineering at the University of Florida.  (Doc. #1, *PageID* #s 86-90).  Dr. Klausner wrote, in part:

> "It is my opinion that the position of Maintenance Engineer is a specialty position, and the nature of the specific duties are so specialized and complex that the knowledge required to perform these duties is usually associated with a[n] attainment of a minimum of a bachelors degree in Mechanical Engineering, or a related field.  Additionally, Mr. Onozato is, without a doubt, well-suited for the position of Maintenance Engineer having achieved the equivalent of a Bachelor of Science degree in Mechanical Engineering."

*Id*. at ¶21 (quoting Exhibit F, *PageID* #s 89-90).

In April 2017, a USCIS Director denied DMAX's I-140 Petition based on its conclusion that the Department of Labor's certification "cannot support the requested immigration visa classification." (Doc. #1, *PageID* #19). The Director reasoned that DMAX's description of a Maintenance Engineer required "something less than a United States bachelor's degree (or its foreign equivalent) … [and] does not qualify as a profession." *Id.* at 18.

DMAX appealed the Director's decision to the USCIS's Administrative Appeals Office (AAO). *Id.* at *PageID* #s 6, 22-26. The AAO's decision indicates that DMAX did not argue that Mr. Onozato's education met or equaled the requirements for a "professional" classification. DMAX instead sought succor in the "skilled worker" classification. The AAO responded negatively:

> [T]he Petitioner [DMAX] asserts that the Director should have considered the petition under the requirements for skilled worker classification and approved the petition for the classification. We do not agree. In part 2 of the Form I-140, the Petitioner checked box at 1.e stating that the petition was being filed for a professional. The Petitioner did not check box at 1.f stating that the petition was being filed for a skilled worker. A Petitioner may not make material changes to a petition already filed to make it conform to USCIS requirements for eligibility and approval. *See Matter of Izummi*, 22 I & N Dec. 169 (Assoc. Comm'r 1998). Therefore, the Director was correct in not considering the alternative classification of skilled worker now claimed by the Petition on appeal.

(Doc. #1, *PageID* #24).

DMAX also tried to convince the AAO that the Director should have sent a Request For Evidence if there was uncertainty as to which classification DMAX was applying for. *Id.* This argument failed in the AAO. The AAO observed that DMAX checked a single box in its I-140 Petition that "is only for a professional…," and DMAX

did not check the box for "skilled worker." *Id*. at 24-25.  This, the AAO found, left "USCIS not unsure about which classification category the Petitioner was applying for, and there was no issue to clarify with an RFE [Request For Evidence]." *Id*. at 25.

In conclusion, the AAO held the Department of Labor's certification did not establish that Mr. Onozato qualified for a professional visa "because the terms of the labor certification permit an individual to qualify for the job with less than a U.S. baccalaureate degree or foreign equivalent degree…." *Id*. at 25.  The AAO further found that Mr. Onozato does not have a bachelor's degree or foreign equivalent degree "as required to be eligible for classification as a professional." *Id*.

Although the AAO denied DMAX's Petition in November 2017, Plaintiff alleges that the USCIS granted Mr. Onozato an H1-B visa on December 1, 2017.  Plaintiffs' Complaint does not describe the specific category of this H1-B visa.  (Doc. #1, ¶ 23). Regardless, an H1-B visa may be granted to "an alien … to come to the United States temporarily to perform services or labor for, or to receive training from, an employer, if petitioned for by that employer…."  8 C.F.R. § 214.(h)(1); *see* 8 U.S.C. § 101(a)(15). Mr. Onozato's H1-B visa turns out to be rather slippery because, as Plaintiffs explain, Mr. Onozato "is now at the end of the 6 year H1[-]B visa status…," (Doc. #1, ¶6), and the "approval [of his H1-B visa] is dependent on the approval of Plaintiffs' I-140 petition. Without the I-140 petition approval, [Mr.] Onozato's legal status in the United States will expire and he will be forced to leave the country." *Id*. at ¶23.

## III.    Rule 12(b)(6) And The APA

To survive Defendants' Rule 12(b)(6) Motion, DMAX's Complaint "must contain

(1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.' " *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  A Complaint must also contain "more than mere 'labels and conclusions….' " *Stein v. HHGREGG, Incorporated*, 873 F.3d 523, 528 (6th Cir. 2017) (quoting, in part, *Twombly*, 550 U.S. at 555 (2007)).

The Administrative Procedures Act provides judicial relief from a final administrative decision in limited circumstances.  "The reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be--arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

> An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).  The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given."  *Id.* at 43, 103 S.Ct. 2856.  However, "[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned." *Alaska Dep't of Env't Conservation v. EPA,* 540 U.S. 461, 497, 124 S.Ct. 983, 157 L.Ed.2d 967 (2004).

*Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006).

## IV.    Discussion

### A.    <u>Exhaustion and Waiver</u>

Defendants contend that Plaintiffs' Complaint should be dismissed under Rule

12(b)(6) because Plaintiffs failed to exhaust their administrative remedies. This argument implies, at a minimum, that Plaintiffs either skipped a step in the immigration process or failed to pursue a potentially available administrative remedy before seeking judicial relief. Defendants, however, do not point to a particular administrative step or potential remedy that Plaintiffs missed or failed to exhaust before bringing this case. As a result, there is no basis for concluding that Plaintiffs failed to exhaust their administrative remedies in a manner that bars them from seeking judicial review. *Cf. EG Enterprises, Inc. v. Department of Homeland Sec.*, 467 F.Supp.2d 728, 732 (E.D. Mich. 2006) ("there is no statutory requirement that a petitioner exhaust its administrative remedies before filing suit in United States District Court, and the 'Supreme Court has recognized that, in cases governed by the [APA], section 10(c) of the APA, 5 U.S.C. § 704, ... limits the discretion of courts to impose exhaustion requirements.'" (brackets in original; citations omitted)).

Defendants fare somewhat better, yet ultimately without success, when arguing, "A party may not challenge agency action that was not presented to the agency during administrative proceedings." (Doc. #24, *PageID* #217). Defendants reason that because Plaintiffs failed to raise their present arguments in the AAO, they have waived their present arguments.

Defendants' argument—properly read as invoking "issue exhaustion"—is born from waiver: "The administrative waiver doctrine, commonly referred to as an issue exhaustion, provides that it is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency involved." *Coalition for*

9

*Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 461-62 (6th Cir. 2004).

Issue exhaustion thus relates to individual issues not raised before an agency rather than

some broader judicial-review-defeating exhaustion problem. "Courts decline to consider

issues not raised before an agency because to do otherwise would 'deprive the [agency]

of an opportunity to consider the matter, make its ruling, and state the reasons for its

action.'" *Id*. at 462 (quoting, in part, *Unemployment Comp. Comm'n v. Aragon,* 329 U.S.

143, 155, 67 S.Ct. 245 (1946)).

It should be noted that the parties' briefing on the waiver issue is overly concise.

As will be seen in the next paragraph, Defendants identify only a single argument that

Plaintiffs allegedly failed to raise in the AAO. Plaintiffs' approach does not mention that

single argument. They instead rely on the discretionary nature of administrative

exhaustion discussed in *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 599 (6th Cir.

2014). *See* Doc. #27, *PageID* #s 240-41. The parties would have done well to further

develop their respective analyses on the waiver issue. This aside, Plaintiffs' Complaint is

the focal point of the parties' present Rule 12(b)(6) dispute, and a return there is more

worthwhile.

Plaintiffs' Complaint contains a section titled "Legal Analysis" in which they

challenge—on several grounds—the AAO's finding that Mr. Onozato did not qualify for

a professional visa. (Doc. #1, ¶s 25-35). Although Plaintiffs might or might not have

waived some of these contentions, it is unnecessary to delve into each to see if it is

waived because Defendants identify only a single argument that Plaintiffs allegedly failed

to raise in the AAO. Defendants explain, "DMAX now reverts to its argument that [Mr.]

Onozato's experience is equivalent to a U.S. bachelor's degree. The Court should not resolve an issue that the AAO … did not have an opportunity to address." (Doc. #24, *PageID* #218).

The AAO's ultimate "Conclusion" (actually two conclusions) states:

The labor certification does not support the classification of professional, as requested in the Form I-140 petition, because the terms of the labor certification permit an individual to qualify for the job with less than a U.S. baccalaureate or foreign equivalent degree. Furthermore, the record indicates that [Mr. Onozato] does not have a bachelor's degree or a foreign equivalent degree, as required to be eligible for professional classification.

(Doc. #1, *PageID* #25).

Defendants' waiver argument shaves too much from the AAO's decision. The AAO plainly found that Mr. Onozato does not have the education level to be eligible for professional classification. *See id*. The AAO, moreover, knew that DMAX was relying on Mr. Onozato's work experience and education to qualify him for the professional classification. Indeed, the something "less than" to which AAO referred meant Mr. Onozato's work experience combined with his less than a baccalaureate education. The AAO, moreover, described some of Mr. Onozato's work experience and acknowledged the professor's opinion that Mr. Onozato's "16 years of experience and professional training in mechanical engineering was equivalent to a bachelor of science degree in mechanical engineering from an accredited college or university in the United States." *Id*. Because the AAO was well aware that DMAX sought to qualify Mr. Onozato under the professional classification by dint of his education and work experience, it was not deprived of the opportunity to consider this possibility, make its ruling, and state its

reasoning. *See Coalition for Gov't Procurement*, 365 F.3d at 462. As a result, Defendants' waiver argument lacks merit.

Even if the opposite were true, it is not all that clear that Plaintiffs presently assert Plaintiffs' claim as Defendants frame it—*i.e.*, that the AAO's decision was arbitrary and capricious because Mr. Onozato's work experience plus education qualify him for a professional visa. Plaintiffs do not raise this argument in their Response (Doc. #27), and their claims as pled in their Complaint do not seem to do so either. *See* Doc. #1, ¶s 37-39.

In their Response, Plaintiffs report that their Complaint alleges, "Defendants acted arbitrarily and capriciously in deviating from established USCIS policy and regulations regarding the adjudication of I-140 petition." (Doc. #27, *PageID* #238) (citing Doc. #1, ¶s 37-39). They next explain, "In sum, Plaintiffs alleged that Defendant held Plaintiffs to a higher evidentiary burden that the standard and required 'preponderance of the evidence determined by USCIS policy and regulation. Plaintiff also alleged different legal standards created by two agencies within the Department of Homeland Security created this very legal schism for which they now seek relief." *Id.* (citing Doc. #1, ¶s 37-39). Neither of these arguments indicate that Plaintiffs are presently asserting that Mr. Onozato's is entitled to a professional visa based on his work experience plus education or that the AAO's conclusion otherwise was arbitrary and capricious. And, the relief Plaintiffs seek does not include a declaration that Plaintiff qualifies for a professional visa by his education and work experience. *See* Doc. #1, ¶s 40-47.

Accordingly, Defendants' waiver contentions lack merit. Regardless, even if waiver bars Plaintiffs' present claims, it causes no harm or prejudice to Defendants to review Plaintiffs' Complaint under Rule 12(b)(6) because Plaintiffs' claims fail as a matter of law.

**B.    Arbitrary and Capricious**

Defendants contend that a Rule 12(b)(6) dismissal is warranted because Plaintiffs' Complaint does not state a facially plausible violation of the Administrative Procedures Act. Defendants reason that in the circumstances described in the Complaint, "no relief can be granted by this Court." (Doc. #24, *PageID* # 218).

Plaintiffs contend that Rule 12(b)(6) dismissal is unwarranted because they "have stated federal claims upon which relief may be granted, highlighting the schism between two different interpretations of immigration law, by two agencies under purview of the U.S. Department of Homeland Security." (Doc. #27, *PageID* #s 241). This section of Plaintiffs' Response to Defendants' Rule 12(b)(6) Motion does not go much further. *See id.* at 241-42. They instead rest on "notice pleading," and its "requirement of only a concise statement rather than evidentiary facts." *Id.* at 242. And they conclude that their Complaint "particularly states facts that support each element of Plaintiffs' claims and thus withstands Defendants' Motion to Dismiss." *Id.*

This Court may review an agency's final decision under the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). An administrative decision must be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 USC § 706(2)(A). "An agency decision is arbitrary and capricious if the agency

fails to examine relevant evidence or articulate a satisfactory explanation for the

decision." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006) (citation omitted).

Fleshing this out a bit, the agency's decision is arbitrary and capricious when:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Integrity Gymnastics & Pure Power Cheerleading, LLC v. USCIS*, 131 F.Supp.3d 721,

726 (S.D. Ohio 2015) (Marbley, D.J.) (quoting, in part, *Motor Vehicle Mfrs. Assoc. v.*

*State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443

(1983)).[3]

The AAO's decision was not arbitrary and capricious for several reasons. First,

the INA permits professional EB-3 visas to issue to "[q]ualified immigrants who hold a

baccalaureate degree and who are members of the professions." 8 U.S.C. §

1153(b)(3)(A)(ii). Immigration regulations define a "professional" as "a qualified alien

who holds at least a United States baccalaureate degree or foreign degree equivalent." 8

C.F.R. § 204.5(l)(2). Neither the INA nor the regulatory definition of "professional"

mention or allow work experience or training plus education to qualify an immigrant for

the professional EB-3 visa. Plaintiffs acknowledge in their Complaint that Mr. Onozato

does not hold a bachelor's degree (Doc. #1, ¶ 20), as the AAO correctly observed, *id*. at

---

[3] Although an agency's factual findings are reviewed under the substantial-evidence standard, *see Integrity Gymnastics*, 131 F.Supp.3d at 726, Plaintiffs' Response does not challenge the AAO's factual findings.

*PageID* #25.  Consequently, it was not arbitrary and capricious for the AAO to conclude that Mr. Onozato was ineligible for a professional visa.  *Cf. Digital Realty Trust, Inc. v. Somers*, __U.S.__, 138 S.Ct. 767, 776-77 (2018) ("'When a statute includes an explicit definition, we must follow that definition,' even if it varies from a term's ordinary meaning." (citation omitted)).

Second, neither the INA nor its accompanying regulations provide a means to qualify for a professional visa by work experience or training plus education less than a bachelor's degree.  The regulations point instead to a U.S. bachelor's or foreign-degree mandate to qualify for a professional visa by requiring "evidence that the alien holds a United States baccalaureate degree or a foreign equivalent degree," which "shall be in the form of an official college or university record showing the date the baccalaureate was awarded and the area of concentration of study."  8 C.F.R. § 204.5(l)(3)(ii)(C).  The AAO, moreover, correctly cited two cases for the rule that a single four-year bachelor's degree or its foreign equivalent is statutorily required to qualify for a professional visa.  (Doc. #1, *PageID* #24 (citing *SnapNames.com, Inc. v. Chertoff*, No. 06-65-MO, 2006 WL 3491005, at *10 (D. Or. 2006) ("it is within the agency's authority to conclude a single equivalent degree is required [to secure a professional visa]."); *Maramjaya v. U.S. Citizenship and Immigration Services*, No. 06-2158, 2008 WL 9398947, at *6 (D.D.C. 2008) ("The Court finds entirely reasonable USCIS's determination that a four-year degree was required [for a professional visa].").  Because the AAO's decision was in line with this single-degree rule and held true to the applicable regulation, its decision was not arbitrary and capricious

15

Third, Plaintiffs' arguments do not demonstrate that the AAO's decision was arbitrary and capricious. Plaintiffs contend in their Complaint that two decisions—*Matter of Ajani*, 12 I. & N. 649, 1967 WL 14098 (Reg'l Commr's 1967) and *Matter of Gowani,* 13 I. & N. Dec. 8, 1968 WL 14031 (Reg'l Comm'r 1968)—identify law that is contrary to the AAO's decision. In *Ajani*, the petitioner was a teacher who lacked academic courses or actual teaching experience. Yet, he qualified as a "teaching professional" based on his "high education in the field[s] of Arabic language and journalism…, and his many years of actual work experience in related fields." 12 I. & N. 649, 1967 WL 14098. In *Gowani*, the Board of Immigration Appeals found, "Considering the petitioner's high education in the field of Arabic language and journalism and many years of actual work experience in related fields, … the petitioner is qualified for the preference classification he seeks." 13 I. & N. Dec. 8, 1968 WL 14031.

Yet, neither *Ajani's* nor *Gowani's* inclusion of work experience as consideration in determining whether the petitioner qualified as a member of the professions survive the Immigration and Nationality Act of 1990, Pub. L. No. 101-649 (1990) and its accompanying regulations. As previously explained, current immigration law explicitly requires a bachelor's degree or foreign equivalent and does not permit work experience combined with some education to qualify a non-U.S. citizen for a professional visa. *See* 8 U.S.C. § 1153(b)(3)(A)(ii); *see also* 8 C.F.R. § 204.5(l)(3)(ii)(C).

According to Plaintiffs, the Department of Labor's certification conclusively established that Mr. Onozato's work experience and education qualify him for a professional visa. They see a schism between the different language the Department of

Labor and the USCIS use in this situation. They have a point about the different language each agency uses, but it does not help them show the AAO's decision was arbitrary and capricious. First, their point.

Plaintiffs rely on a Department-of-Labor regulation that permits certification based on certain "alternative requirements…." (Doc. #1, *PageID* #9). The regulation instructs:

> (i) Alternative experience requirements must be substantially equivalent to the primary requirements of the job opportunity for which certification is sought; and

> (ii) If the alien beneficiary already is employed by the employer, and the alien does not meet the primary job requirements and only potentially qualifies for the job by virtue of the employer's alternative requirements, certification will be denied *unless the application states that any suitable combination of education, training, or experience is acceptable*.

20 C.F.R. § 656.17(h)(4). Relying on this, Plaintiffs argue:

> Plaintiff [Mr.] Onozato, who is currently employed by Plaintiff DMAX, does not meet the primary job requirements and only potentially qualifies for the job by virtue of the alternative requirements. Due to this, [Department of Labor] granted certification because the application specifically stated that Plaintiff DMAX would accept any equally suitable combination of education and/or experience, which would qualify an applicant to perform the duties of the job offered.

(Doc. #1, ¶30).

Yet, accepting that the USCIS did not follow this Regulation when determining that Mr. Onozato did not qualify for the professional visa does not demonstrate that the AAO's decision was arbitrary and capricious. Plaintiffs cite no authority that finds error when an administrative agency follows its own regulations rather than the regulation of another agency.

It is also a fruitful line of thinking to ask, "What did the Department of Labor certify?"  Plaintiffs maintain that it certified him as qualified for the professional visa based on 20 C.F.R. § 656.17(h)(4) and the alternative requirements DMAX described in its Application—namely, his work experience amounting to "96 months of progressively advanced experience of controls systems used in Japanese tools."  Plaintiffs find this experience "was substantially equivalent to the primary requirement of bachelor's degree, or its foreign equivalent, plus experience."  (Doc. #1, ¶30).

The AAO rejected this contention, finding:

> The labor certification does not support the classification of professional, as requested in the Form I-140 petition, because the terms of the labor certification permit an individual to qualify for the job with less than a U.S. baccalaureate degree or foreign equivalent degree….

 (Doc. #1, *PageID* #25).  In other words, in the AAO's view, the fact that the Department of Labor certified DMAX's Application did not qualify Mr. Onozato for a professional visa under the USCIS's regulation.  This was not arbitrary and capricious because the functions the Department of Labor and the USCIS perform in the professional-visa process differ significantly.  The Department Labor's makes only an occupational assessment of an employer's Application for a professional visa.  Its task is to assess (1) whether there are insufficient workers who are able, willing, and qualified to perform the skilled or unskilled job at issue, presently the maintenance-engineer job DMAX described in its Application; and (2) whether employing Mr. Onozato "will not adversely affect the wages and working conditions of workers in the United States similarly employed."  8 U.S.C. § 1182(a)(5)(I).  Congressional purpose, here, is to maximize the

number of U.S. jobs available to U.S. citizens.  "[T]he plain language, as well as the legislative history of…, the labor certification requirements … reflect a clear congressional concern for protecting the interests of American labor over those of foreign workers."  *Pai v. U.S. Citizenship and Immigration Services*, 810 F.Supp.2d 102, 111 (D.D.C. 2011).  The Department of Labor's application form addresses this concern by seeking from the employer details from the available job and information about the employer's efforts to advertise it and thus potentially hire an American worker instead of a foreign worker.  *See* Doc. #1, *PageID* #s 65-68.

In contrast, the USCIS has a gatekeeper function in this situation.  It may issue professional visas, but it may not exceed the professional-visa quota that Congress sets.  *See* 8 U.S.C. § 1153(b)(3)(A).  No shock, then, that the USCIS has narrow qualification criteria—a bachelor's degree or foreign-equivalent degree—for securing a professional visa.

Given the different administrative functions these two agencies perform, and the USCIS's narrow qualifying criteria for a professional visa, the AAO correctly recognized that the Department of Labor's "certification does not support the classification of professional…, because the terms of the labor certification permit an individual to qualify for the job with less than a U.S. baccalaureate degree or foreign equivalent degree." (Doc. #1, *PageID* #25).  As a result, it was not arbitrary and capricious for the AAO to deny DMAX's I-140 Petition on this basis.

Turning to Dr. Klausner's expert opinion, Plaintiffs contend that his opinion should have qualified Mr. Onozato for a professional visa.  Although Dr. Klausner

strongly supported Mr. Onozato's ability to work as a Maintenance Engineer by dint of his education and work experience, Dr. Klausner's opinion conflicts with the qualification criteria for a professional visa. Again, without a bachelor's degree, Mr. Onozato's work experience, training, and education did not qualify him for a professional visa under 8 U.S.C. § 1153(b)(3)(A)(ii). Consequently, it was not arbitrary and capricious for the AAO to reject Dr. Klausner's opinion.

Construing Plaintiffs' Complaint in their favor, they also look to 8 U.S.C. § 101(a)(32) and 8 C.F.R. § 204.5(k)(2) for help in establishing that Mr. Onozato qualifies for the professional visa. This immigration statute and regulation define the term "profession" to include a list of jobs, including "engineers." "Thus, a maintenance engineer position is already recognized as a professional occupation," according to Plaintiffs. (Doc. #1, ¶ 27). Plaintiffs do not develop this argument further or provide supporting citations.

Again, the criteria needed to obtain a professional visa required Mr. Onozato to hold a bachelor's degree or foreign-equivalent degree. This remains so regardless of DMAX's job title, "Maintenance Engineer." Additionally, DMAX described the job qualifications of its Maintenance Engineer to require something other than a bachelor's degree, meaning work experience—especially 96 months of progressively advanced experience of controls systems used in Japanese tools. Consequently, the fact that DMAX included the word "engineer" in the job title does not satisfy the criteria for a professional visa.

In Plaintiffs' remaining effort to show that the AAO's decision was arbitrary and

capricious, they argue that the AAO held them to a higher "evidentiary standard" than the preponderance-of-evidence standard required by USCIS policy and regulations. They explain, "A review of the Certified Administrative Record will establish that both the USCIS and AAO did not consider the relevant factors and did not articulate a rational connection between the facts found and the conclusions made in the decision." (Doc. #1, ¶38). Plaintiffs cite *Matter of Chawathe*, 25 I. & N. Dec. 369, 2010 WL 4144591 (Oct. 20, 2010) (citation omitted) to support that the USCIS must apply the preponderance-of-evidence standard and that this standard requires a visa petitioner to demonstrate "that the applicant's claim is 'probably true,' where the determination of 'truth' is made based on the factual circumstances of each individual case." *Id*. at 375-76, 2010 WL 4144591, *6 (citing, in part, *Matter of Martinez*, 21 I&N Dec. 1035, 1036 (BIA 1997) (other citations omitted)). Assuming *Chawathe* is correct on these points, Plaintiffs have not alleged plausible facts showing that the AAO derived a higher than preponderance-of-evidence standard from a particular USCIS policy or regulation. *See* Doc. #1, ¶s 30-35, 37-39; Doc. #27, *PageID* #s 240-42. They also do not indicate what factors the AAO failed to consider or why the rationale it provided failed to contain a rational connection between the facts and its conclusions. *See id*. At best, Plaintiffs' Complaint raises only conclusory assertions without sufficiently specific information to support a plausible claim that the AAO's decision was arbitrary and capricious regarding Plaintiffs' burden of proof, the factors it failed to consider, or its rationale. *See Stein*, 873 F.3d at 528 (" 'labels and conclusions' … will not do" under Rule 12(b)(6)).

Accordingly, for all the above reasons, Defendants' Motion to Dismiss is well

taken.

**IT IS THEREFORE RECOMMENDED THAT**:

1.    Defendants' Motion to Dismiss (Doc. #24) be GRANTED; and

2.    The case be terminated on the docket of the Court.


January 7, 2019                              *s/Sharon L. Ovington*
                                             Sharon L. Ovington
                                             United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).